24-07446MB(JR)

# AFFIDAVIT IN SUPPORT OF APPLICATION

1. I, Elizabeth Guggisberg, being first duly sworn, hereby depose and state as follows:

2. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for offenses of any laws of the United States under 18 U.S.C. § 3051. I am a Special Agent employed by the Department of Homeland Security, Homeland Security Investigations (HSI). I am currently assigned to the Assistant Special Agent in Charge, Nogales, Arizona office.

3. I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training which were conducted at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to being employed by HSI, I was a Border Patrol Agent with the United States Border Patrol for approximately three years. I graduated from the University of Minnesota in 2016 with a Bachelor of Arts in Sociology of Law, Criminology, and Deviance.

4. As a Special Agent with HSI, I am responsible for investigating and enforcing violations of federal law, including those enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code.

5. As part of my current duties with HSI in Nogales, Arizona, I have participated in criminal investigations involving narcotics and firearm trafficking organizations (FTOs). Pursuant to my participation in these investigations, I have performed various tasks including: (a) functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics, munitions and weapons; (b) functioning as a surveillance agent and thereby observing and recording movements of persons smuggling narcotics, weapons, illicit proceeds, and other activity in support of their illegal activities; (c) interviewing witnesses, suspects, cooperating individuals, and confidential sources relative to the illegal smuggling of narcotics, weapons, and illicit proceeds; and (d) participating in investigations involving narcotics and weapons trafficking.

6. While conducting narcotics and firearm trafficking investigations, I have personally interviewed informants and persons involved in the distribution of illegal narcotics in the United States, and weapon trafficking into Mexico. I have consulted with HSI investigators concerning the practices of weapons traffickers and the best methods of investigating them. In preparing this affidavit, I have conferred with other Special Agents and law enforcement officers involved in this investigation. Furthermore, I have personal knowledge of the following facts or have learned them from the individuals mentioned herein.

7. As a result of my training and experience, I am familiar with federal laws, including 18 U.S.C. § 554: Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise,

article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law, shall be fined under this title, imprisoned not more than 10 years, or both.

8. I am also familiar with 18 U.S.C. § 371, which states: If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

9. Based upon my experience in conducting criminal investigations of violations of federal firearm trafficking laws, I know that firearm trafficking organizations have developed several methods to insulate their illegal activities from law enforcement detection. These methods are common to firearm trafficking organizations (FTOs) to varying degrees of sophistication. One method that trafficking organizations have employed is to utilize cellular telephones to communicate when conducting their illegal activity. These devices are utilized in furtherance of the crime to include: notification of the pick-up and drop-off locations of the vehicle used to smuggle the firearms / munitions; photographing members of the conspiracy, or of the firearms / munitions; scouting for law enforcement; identifying the types of firearms, ammunition or munitions to be acquired, purchased or transported; locations of the stores/individuals or ads to purchase the firearms, ammunition and munitions; transferring funds to acquire, purchase or transport the firearms, ammunition, and munitions; and collecting and distributing the proceeds derived from this unlawful activity.

10. I submit this Affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a Search Warrant authorizing the examination of the contents of electronic communication devices capable of accessing the internet (the "Target Devices," defined below), and the extraction from the Target Devices and any attached SIM cards of electronically stored information further described in Attachment B hereto. Because this Affidavit is being submitted for the limited purpose of securing a warrant to search the Target Devices, I have set forth only the facts which I believe are necessary to establish probable cause to search the Target Devices.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

11. The electronic communication devices (Target Devices) to be examined are described as:
    a. One (1) black Apple iPhone and any attached SIM card, which HSI and ATF Agents seized from Carlos JUAREZ's person on March 25, 2024, at the time of his arrest in Fort Pierce, Florida, and
    b. One (1) black Samsung phone and any attached SIM card, which HSI and ATF Agents seized during Carlos JUAREZ's arrest on March 25, 2024, in Fort Pierce, Florida.

The Target Devices and any attached SIM cards to be searched pursuant to the attached Application are further described in Attachment A hereto.

## BACKGROUND ON SMARTPHONES

12. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers and others experienced in the forensic examination of electronic communication devices, I know that certain types of cellular telephones referred to as "smartphones" (such as the Target Devices) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access has been purchased through an electronic communication service provider for a particular smartphone, a smartphone can run complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

13. As described in Attachment B hereto, this Affidavit also seeks permission to search and seize certain electronic records that might be stored within the Target Devices and any attached SIM cards. Some of these electronic records might take the form of files, documents, or other data that are user generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

14. Although some of the records requested in this Affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), electronic communication devices (such as the Target Devices) can contain other forms of electronic evidence that are not user-generated. In particular, an electronic communication device may contain records of how it has been used and/or the person(s) who utilized the electronic communication device. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers, and other persons involved in the forensic examination of electronic communication devices, I know that:

    a. Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

    b. Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

    c. Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication

       devices that can reveal information such as online nicknames and passwords;
- d. Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;
- e. Computer file systems can record information about the dates that files were created and the sequence in which they were created. This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;
- f. When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were created as well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences; and
- g. The types of evidence described above may be direct evidence of a crime, or indirect evidence of a crime, indicating the location of evidence or a space where evidence was once located. All these types of evidence may indicate ownership, knowledge, and intent to commit a given offense. Evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used.

**Characteristics Of Individuals Involved in Firearms Trafficking Organizations**

15. Based upon my knowledge, experience, and training in FTO investigations, as well as the training and experience of other law enforcement officers with whom your Affiant has had discussions, your Affiant knows that there are certain characteristics common amongst individuals involved in FTOs. Individuals involved in firearm-trafficking activity tend to:
    a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;
    b. Collect data pertaining to other co-conspirators involved in firearm, ammunition, and munitions-trafficking activity, including firearm, ammunition and munition types and quantities acquired or provided, as well as monies owed and/or paid for specific firearms, ammunition and munitions.
    c. Possess and maintain records reflecting bank transactions and/or money transfers;
    d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the Target Devices). These records are often maintained for several years on their

  phones which are kept close in close proximity to the firearm trafficker to enable the firearms-trafficker to review the records, which are highly valued;

 e. Correspond and/or communicate with and/or meet with other firearm-trafficking associates to share firearm-trafficking information and/or materials using text messages, emails, SMS/MSS messages, voice messages, instant messages, and third-party messaging applications such as WhatsApp, Instagram, Signal, Facebook Messenger, Twitter, Telegram;

 f. Retain electronic correspondence from other firearm-trafficking co-conspirators relating to firearm-trafficking activity;

 g. Conduct web searches related to purchasing and acquiring firearms, ammunition, and munitions, including searches on armslist, gunbroker.com, and other sites that sell, transfer or trade firearms and munitions;

 h. Take photographs or record videos of the firearms/munitions desired, acquired and received;

 i. Send out or receive GPS coordinates or GPS location pins to identify locations to meet, transfer the firearms, ammunition and munitions and the stores or locations to purchase the firearms, ammunition, and munitions; and

 j. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the firearm-traffickers have been in contact and/or conducted firearm-trafficking activity.

## HISTORY OF INVESTIGATION AND PROBABLE CAUSE

16. On August 4, 2023, Jorge CASAHONDA Padilla, a Mexican Citizen, attempted to enter the Republic of Mexico through the Mariposa Port of Entry (POE) in Nogales, Arizona. A total of ten Pioneer Arms Sporter rifles and twenty 30-round 7.62 x 39 magazines were found in the spare tire area of the trunk.

17. The serial numbers on all ten rifles were obliterated. The United States Border Patrol (USBP) Evidence Collection Team (ECT) were able to recover the obliterated serial numbers for five of the ten firearms. The firearms' serial numbers were then entered into the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) electronic tracing system (ETRACE). ETRACE results identified Daniel NASTARI, DOB: 12/11/1966, as the purchaser of the five rifles. NASTARI is a resident of, and purchased the firearms in Fort Pierce, Florida. The firearms were purchased at Gunslingers, a federally licensed firearms dealer, on July 21, 2023, with a time to recovery of 14 days.

18. On September 7, 2023, HSI Nogales contacted ATF Fort Pierce for assistance in obtaining the ATF Form 4473 for NASTARI's July 21, 2023, purchase from Gunslingers FFL. A few 4473s were obtained and it was discovered NASTARI had purchased 80 Pioneer Arms Sporter rifles in three separate occasions - all cash transactions. NASTARI purchased 14 rifles on July 14th and paid approximately $11,250 in cash. NASTARI purchased 26 rifles on July 21st and paid approximately $20,867 in cash. NASTARI purchased 40 rifles on

September 1, 2023, and paid approximately $31,170 in cash. These three purchases totaled approximately $63, 287.

19. ATF Fort Pierce and HSI Nogales obtained tolls on NASTARI's phone. A common contact of NASTARI was identified as Carlos JUAREZ. JUAREZ had been detained at the Nogales POE in June 2023, attempting to exit the United States and enter Mexico with a pistol in his waistband. JUAREZ had one phone in his possession when he was stopped in June 2023. JUAREZ agreed to work with investigators and provide them with information on larger weapon loads. Criminal charges were not sought at that time. JUAREZ did not provide any substantive information and ceased communication with the case agent shortly thereafter.

20. ATF Fort Pierce and HSI Nogales obtained tolls on JUAREZ' cellphone. JUAREZ lives on the same street as NASTARI in Fort Pierce, Florida. ATF Fort Pierce had pen registers on both JUAREZ and NASTARI's phone numbers. Based on the communication patterns of JUAREZ and NASTARI, it was determined that NASTARI was working with JUAREZ.

21. On October 12, 2023, HSI Nogales and ATF Fort Pierce became aware that NASTARI returned to Gunslingers FFL and placed an order for an additional fifty (50) Pioneer Arms Sporter Rifles. NASTARI paid approximately $39,828 in cash.

22. On October 24, 2023, HSI Nogales and ATF Fort Pierce, with assistance from HSI Fort Pierce, interdicted the fifty (50) Pioneer Arms Sporter rifles that NASTARI had ordered on October 12, 2023.

23. On October 24, 2023, Agents arrested and interviewed JUAREZ. During the interview, JUAREZ confirmed that he directed NASTARI to purchase the firearms and paid NASTARI for each firearm purchased. In addition, when asked who was in charge of recruiting drivers to take the firearms from Florida to Arizona. JUAREZ stated, "They do". When asked who "they" is, JUAREZ stated the Mexican numbers from his phone. Agents understood that to mean that JUAREZ received instructions for the firearm purchase and delivery on his phone.

24. In his October 2023 interview, JUAREZ explained that after he received the firearms, he would transfer the firearms to a courier, and follow the courier to a predetermined location in Arizona. In doing so, cellular phones, such as the Target Devices, would be the most efficient means of coordinating and communicating with the others involved in those activities.

25. When JUAREZ turned himself in to police in October 2023, he did not have any cellphones in his possession. JUAREZ told Agents he got rid of them. JUAREZ eventually called his brother, and his brother placed JUAREZ' cellphone in JUAREZ' mailbox. Agents retrieved JUAREZ' cellphone, a red Apple iPhone 11, and obtained a search warrant for the cellphone. After executing the search warrant on JUAREZ' phone, it was determined the app "WhatsApp" had been deleted from the phone.

26. A search of JUAREZ' phone, pursuant to a federal search warrant, revealed text messages with NASTARI discussing the July 14, 2023, purchased firearms. On July 15, 2023, NASTARI texted JUAREZ, "Yo i need one of those back", "Need to pull bolt to see if it has numbers". JUAREZ replied, "Later not around rn". NASTARI then texted, "If it does, ima need them all back". JUAREZ responded, "Would be nice double check taht before they left our the door," and then "I'll have them back sun down". NASTARI responded, "Kkk".

27. On October 12, 2023, JUAREZ and NASTARI texted each other about purchasing additional firearms. NASTARI texted JUAREZ, "Get the 36?" JUAREZ replied, "Go ahead." On that same day, NASTARI texted JUAREZ, "Goin back, said he got card straight." "Only 29 having trouble finding anymore." Later that day, NASTARI purchased fifty (50) Pioneer Arms Sporter 7.62x39 mm and 5.56x45 caliber rifles and paid $39,828.

28. On March 25, 2024, HSI and ATF Fort Pierce arrested JUAREZ following a traffic stop in Fort Pierce, FL. During the arrest, agents found three cellphones. There was one iPhone in JUAREZ' person. There were also one Samsung cellphone and one Motorola cellphone recovered. Two of the cellphones were on JUAREZ' person and the third phone was in the possession of his child. The iPhone was unlocked at the time of his arrest indicating recent use. Agents are not sure if the Samsung or Motorola was being held by JUAREZ' child. When Agents allowed JUAREZ to make a phone call, they noted he used his Motorola cellphone to call his attorney.

29. In March 2024, a confidential informant (CI) told investigators that JUAREZ communicated with the CI using Instagram. The CI stated JUAREZ would send messages alluding to illegal activities they discussed in person. Agents observed Instagram notifications on the locked screen of the seized Apple iPhone. In my training and experience, Instagram accounts can be accessed from multiple phones and computers after logging into the individual's account.

30. The CI believed JUAREZ uses multiple phones for business. Agents believed this to mean illegal activities. The CI believed JUAREZ also communicated with him (CI) using an Android because the text messages were green. Samsung is a brand of smartphone that uses the Android operating system.

31. Based on this information, I believe both the Apple iPhone and the Samsung were used by JUAREZ as he conspired with others to traffic firearms.

32. In my training and experience, I know that narcotics and firearm traffickers are aware their activity is illicit and attempt to conceal their activity by using alternative means of communication, such as, WhatsApp messages, Instagram messages, Facebook messages, data location, emails, etc. I also know their cellular phones or electronic media devices may contain evidence of their illicit activities. Therefore, I believe there may be evidence of firearms trafficking on the Target Devices and any attached SIM cards to include coordinator identity, directions, and location data relevant to the load and offload locations of the firearms and munitions as well as the financial arrangements for the purchase, acquisition, transfer, transport and delivery of the firearms, ammunition, and munitions.

33. It is not uncommon for individuals engaged in firearm trafficking to conspire with others willing to participate and further assist in these activities. Cellular phones are one of the most immediate, convenient, and effective ways to communicate over long and short distances while engaged in criminal activity. It is my belief that the suspect in this matter, JUAREZ, would have communicated with other individuals, utilizing his cellular phone, in order to facilitate the purchase and subsequent transport of firearms from Florida to Arizona. It is known that JUAREZ communicated with NASTARI using his cellular phone, and it is believed JUAREZ received instruction from other unknown individuals, using his cellular phones.

34. Also, current technology has allowed personal cellular phones to receive and transmit media in the form of photos and movies. Firearm traffickers often take photos of themselves, their associates, their property and the firearms desired, acquired, or transferred as proof of receipt and movement of the firearms, ammunition and munitions being trafficked. Currently, phones have also been equipped with access to the internet and have thus allowed the user to transmit electronic mail (E-mail) as an alternative form of communication. Access to the internet also allows the user to utilize real time GPS enabled maps to navigate to and from pick up/drop locations and to receive and send money. Traffickers commonly maintain addresses or telephone numbers in cellular telephones which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization.

35. Based upon the above, I believe that probable cause exists to search the Target Devices and any attached SIM cards for the items set forth in Attachment B hereto. I believe that the Target Devices and any attached SIM cards contain evidence relating to the commission of criminal offenses, that is, Smuggling Goods from the United States, in violation of Title 18, United States Code, Section 554 and Conspiracy to Smuggle Goods from the United States, in violation of Title 18, United States Code, 371.

Respectfully submitted this _____ day of May 2024.

ELIZABETH M GUGGISBERG
Digitally signed by ELIZABETH M GUGGISBERG
Date: 2024.05.02 16:18:12 -07'00'

Elizabeth Guggisberg
Special Agent, Homeland Security Investigations

Sworn and subscribed to me telephonically this __3rd__ day of May 2024.

Honorable Jacqueline Rateau
United States Magistrate Judg